UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
UNITED STATES OF AMERICA, :
                                                       :
           -against-                     :               16cr108
                                                       :
ANDY MACCOW,                     :               OPINION & ORDER
                                                       :
               Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

WILLIAM H. PAULEY III, District Judge:

        Defendant Andy Maccow moves to suppress post-arrest statements, arguing that they were made without a valid waiver of his Fifth Amendment rights as required by Miranda v. Arizona, 384 U.S. 436 (1966). Maccow's motion to suppress is denied.

## BACKGROUND

        On August 5, 2016, this Court held an evidentiary hearing on Maccow's suppression motion. The Government called Detective John Hoffman of the New York City Police Department. Maccow called Dr. Cheryl Paradis, a clinical psychologist. Maccow also testified.

        On November 14, 2013, Hoffman and Special Agent Thomas D'Amico of the Federal Bureau of Investigation arrested Maccow and questioned him. Hoffman and D'Amico advised Maccow that it would be beneficial for him to provide them with information. (See August 5, 2016 Suppression Hearing Transcript ("Supp. Tr."), at 74–75, 110, 121.) D'Amico advised Maccow of his Miranda rights, who indicated verbally and in writing that he understood them. (See Supp. Tr. at 117; Gov. Ex. 1.) Maccow then gave a detailed statement to Hoffman and D'Amico admitting his participation in various crimes, including home invasions and burglaries. (See Supp. Tr. 44–46.) The next morning Maccow made further statements to

1

Hoffman while waiting for the Metropolitan Correctional Center facilities to open.  (See Supp. Tr. at 46–52.)  D'Amico then summarized Maccow's post-arrest statements in a seven-page report.

## DISCUSSION

A suspect's waiver of his Miranda rights is effective if it is "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Berghuis v. Thompkins, 560 U.S. 370, 381 (2010).  A suspect need not "know and understand every possible consequence of a waiver of the Fifth Amendment privilege," so long as he is aware that "whatever he chooses to say may be used as evidence against him" and "that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time."  Colorado v. Spring, 479 U.S. 564, 574–75 (1987).  In determining whether a Miranda waiver is knowing and voluntary, courts look to the totality of the circumstances.  See United States v. Taylor, 745 F.3d 15, 23 (2d Cir. 2014).  "The fact that a defendant signed a written waiver form may be highly probative but is not by itself dispositive in establishing the voluntariness or involuntariness of a waiver of rights."  United States v. Hsu, 590 F. Supp. 2d 565, 568 (S.D.N.Y. 2008).

Maccow moves to suppress his post-arrest statements, claiming that his waiver of Miranda rights was invalid because he was coerced into waiving them, lacked the mental capacity to waive his rights, was heavily intoxicated when his rights were read to him, and/or the Miranda warnings were not administered until after he had been interrogated.

It is clear from the testimony at the suppression hearing that Maccow was neither tricked nor coerced into making a post-arrest statement.  Hoffman explained that Maccow could

2

"help [him]self, if [he] want[s] to cooperate." (Supp. Tr. at 75.)  That is plainly insufficient to show coercion.  See United States v. Calvente, No. 12-cr-732 (WHP), 2013 WL 4038952, at *3 (S.D.N.Y. July 26, 2013) ("A confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials.  Certainly, statements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive.  Statements such as these are merely common sense factual observations.").

Further, the testimony conclusively demonstrates that Maccow understood his Miranda rights and had the mental capacity to waive them.  Dr. Paradis testified that "it was clear to [her]—and [Maccow] said it himself—that he does understand the Miranda warnings; that he does have the capacity." (See Supp. Tr. at 18.)  And Maccow himself testified that he understood his Miranda rights from prior contacts with law enforcement and understood them at the time they were read to him.  (See Supp. Tr. at 127–28 ("Q. You remember Special Agent Damico reading you your Miranda warnings; right?  Q. You've heard these warnings many times; right?  A. Plenty of times.  Q. So when Special Agent Damico read them to you, you weren't confused about what he was saying?  A. Not at all.")

Similarly, the evidence presented at the suppression hearing demonstrates that Maccow was not too intoxicated to waive his Miranda rights.  Whether Maccow consumed narcotics prior to his arrest, "evidence of a defendant's intoxication with alcohol or a controlled substance does not preclude a finding of a knowing and intelligent waiver provided that they appreciate the nature of the waiver." Bruno v. Cunningham, No. 03-cv-937 (MBM), 2004 WL 2290503, at *10 (S.D.N.Y. Oct. 8, 2004) (citation omitted).  Hoffman testified credibly that, as a part of the investigation, he had observed Maccow on many occasions prior to the night of his arrest.  (Supp. Tr. 34–35.)  Hoffman did not observe Maccow exhibiting any abnormal behavior

3

or appearing sick, sleepy, or intoxicated during his arrest or post-arrest statements. (Supp. Tr. at 39, 44.) Moreover, Maccow testified that he understood his Miranda rights when they were read to him that night. (See Supp. Tr. at 127–28.)

Finally Maccow's claim that the Miranda warnings were not administered until the end of his interview the morning after his arrest is not credible. The "Advice of Rights" form that Maccow signed clearly states the date and time as November 14, 2014 at 11:30 p.m. (Gov. Ex. 1.)

Maccow also seeks a supplemental hearing to examine D'Amico "about timing and note-taking methodology." (Supp. Tr. at 145.) However, any testimony regarding timing will be cumulative to the testimony already provided by Hoffman and testimony about D'Amico's note taking methodology is irrelevant to the issue of suppression. See Geders v. United States, 425 U.S. 80, 87 (1976) ("The judge . . . may refuse to allow cumulative, repetitive, or irrelevant testimony.").

In sum, the totality of the credible evidence presented at the suppression hearing demonstrates that Maccow knowingly and voluntarily waived of his Fifth Amendment rights. Accordingly, Maccow's motion to suppress his post-arrest statements and his request to examine D'Amico are denied.

Dated: August 12, 2016
    New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.